UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
                                                          :
SPANSKI ENTERPRISES, INC. and                             :
EUROVU, S.A.,                                             :
                                                          :
                         Plaintiffs,                      :     12-CV-4175-WHP-AJP
                                                          :
              v.                                          :
                                                          :
INTERCOM VENTURES, LLC, INTERCOM                          :
POLAND, LLC, TONY HOTI, and DYLAN                         :
BATES,                                                    :
                                                          :
                         Defendants.                      :
----------------------------------------------------------X

## REPLY DECLARATION OF BOGUSLAW M. SPANSKI IN SUPPORT OF PLAINTIFFS' PRELIMINARY INJUNCTION MOTION

I, BOGUSLAW M. SPANSKI, hereby declare as follows:

1. I am the President of Plaintiff Spanski Enterprises, Inc. ("SEI") and a director of Plaintiff EuroVu, S.A. ("EuroVu"). I have personal knowledge of the matters set forth herein and respectfully submit this declaration in further support of Plaintiffs' motion for a preliminary injunction against Defendants Intercom Ventures, LLC ("Intercom Ventures") and Intercom Poland, LLC ("Intercom Poland") (collectively, "Intercom").

2. Plaintiffs commenced this action and sought injunctive relief because Intercom willfully continues to distribute Plaintiffs' Polish-language television programming despite the valid termination of a January 31, 2011 License Agreement between EuroVu and Intercom Ventures. Intercom merely wants to continue to distribute this programming without license.

3. Intercom's opposition disputes none of these facts, but rather appears to contend that SEI and EuroVu are not entitled to an injunction because Intercom claims to have a contract claim against EuroVu. While I do not believe that this issue has any legitimate bearing on

1

Intercom's ongoing acts of copyright infringement, as set forth below, Intercom's claims are demonstrably false in any event, and nothing but a pretext to try to avoid an injunction being entered against it.

### EuroVu Validly Terminated the License as of May 17, 2012 and Intercom has no Right to Distribute Copyrighted Content

4. It is undisputed that any and all rights Intercom ever had to distribute Plaintiffs' television programming terminated when Intercom repeatedly failed and refused to pay mandatory licensing fees required by the License Agreement. It is undisputed that the License specifically provided that it was subject to termination for failure to pay, and it is undisputed by Intercom that EuroVu followed the proper termination procedure.

5. Intercom started to fall behind on its license payments in late 2011, many months before there was any issue regarding the loss, in late April 2012, of the right to distribute TVP Info, one of the secondary channels under the License Agreement. See Exhibit G attached hereto, containing notices of default dated Feb. 7, 2012, Feb. 14, Feb. 20, March 20 and April 20. See also EuroVu's letter of termination, attached as Exhibit F to my May 24, 2012 declaration. It is thus clear that Intercom's unwillingness to pay the minimum guarantees required by the License Agreement had nothing to do with the loss of the right to distribute TVP Info, which did not occur until late April 2012.

### Intercom's Claim that it was Unaware that the Right to Distribute TVP Info Might Terminate is Demonstrably False

6. In his declaration Valton (Tony) Hoti, Intercom Ventures' president, claims that Plaintiffs are not entitled to a preliminary injunction because EuroVu purportedly never told Intercom that its rights to distribute any channel covered by the License Agreement would expire

2

prior to the Agreement's five-year term. Hoti Decl. at ¶11. The claim in Mr. Hoti's declaration is untrue. First, it should be understood that TVP Info comprised a very minor part of the Polish television package licensed by Plaintiffs to Intercom. The lead international channel of Polish national television, and what was and is of primary importance in the Plaintiffs' Polish television package, is TVP Polonia. TVP Info is a relatively minor, news-only channel.

7. During the course of the negotiations of the License Agreement, Mr. Hoti and I specifically discussed the possibility that Plaintiffs' rights to distribute TVP Info could expire in April 2012. Nor is this a case where it is simply my word against Mr. Hoti's. Those discussions are evidenced in the various drafts of the License Agreement during the negotiation, and in the fact that specific provision was made in the final License Agreement for the early loss of the right to distribute TVP Info. During the negotiation of the License Agreement, following discussions with Mr. Hoti regarding the possible early termination of the right to distribute TVP Info, Intercom tried to negotiate a reduction in the minimum guaranteed payments if the right to distribute TVP Info was terminated during the term of the License Agreement.

8. In a draft of the License Agreement sent to Intercom by Plaintiffs in late November/early December 2010, there was a specific provision that the loss of TVP Info during the license's five-year term would not cause the minimum guarantee to be reduced. Acknowledging that they were well aware that TVP Info might be unavailable for distribution during the entire term of the License Agreement, Intercom specifically tried to change that provision. Attached as Exhibit H hereto is a copy of ¶ 2.2 of that draft agreement, which shows that draft provision, and in red, Intercom's comment on the provision. This demonstrates beyond doubt that Intercom was aware of the possible loss of TVP Info during the term of the License Agreement.

9.  Because TVP Info was such a minor part of the Plaintiffs' Polish television package, and because Plaintiffs' right to distribute it might not be extended beyond an initial 10-year license that ended in April 2012, Plaintiffs rejected Intercom's request to reduce the minimum guarantees in the event that the right to distribute TVP Info was terminated. The final and executed version of the License Agreement specifically provided that the minimum guaranteed payments could not be reduced if the right to distribute TVP Info were lost during the term:

> It is understood and agreed that TVP Info constitutes a non-compensable inclusion in the Package, ***and in the event that TVP Info at any time ceases to be available for distribution in the Package,*** the Package License Fee payable to EuroVu for the Package excluding TVP Info shall remain the same as set forth above for the Package including TVP Info.

License Agreement, attached as Exhibit J hereto, § 2.1(A) [emphasis added]. It is therefore clear that Intercom's claim that they were "defrauded" regarding the status of TVP Info is nonsense, and merely a pretext to infringe Plaintiffs' rights.

### Intercom's Purported Termination of the License is not only Irrelevant; it is Invalid on its Face

10. Intercom Ventures and its president, Mr. Hoti, claim that because Intercom Ventures purported to terminate the License Agreement on May 7, 2012, pursuant to Section 16.4 of the License Agreement, it has 90 days, or until Aug. 5, 2012, during which it can continue to distribute Plaintiffs' television programming. Hoti Decl. at ¶24. But Section 16.4 gives Intercom no such right, and simply reads:

> In the event that Broadcaster, Polcast or Polskie Radio revokes, or EuroVu loses its right to distribute the Channels for any reason, then ***as Intercom's sole remedy Intercom may elect to terminate this Agreement within ninety (90) days following receipt of the written notice from EuroVu,*** Broadcaster, Polcast or Polskie Radio advising Intercom of such revocation.

4

License Agreement, attached as Exhibit J hereto, paragraph 16.4 [emphasis added]. First it should be understood that Plaintiffs disagree that the loss of the right to distribute TVP Info gave Intercom the right to terminate at all. However, that aside, the "Notice of Termination" sent by Intercom was clearly deficient and ineffective, and done with the intent of trying to extend the time during which Intercom could distribute Plaintiffs' programming without a license and without payment.

11. Nothing in this provision gives Intercom the right to continue distributing Plaintiffs' programming up to 90 days after it purports to terminate the License Agreement. Rather, the plain language of the provision gives Intercom Ventures only the option to terminate the License Agreement, as its exclusive remedy, within 90 days of receiving written notice of revocation of the right to distribute "the Channels" (**plural**). The written notice of revocation was received by Intercom on March 30, 2012, according to Mr. Hoti's declaration. Hoti Decl. at ¶18. Ninety days from that date is June 28, 2012. Consequently the latest date for termination of the License by Intercom is June 28. There is no provision for the "effective date" of the termination being some time after the 90-day period.

12. It is obvious that knowing that it was in default under the License Agreement, and that Plaintiffs were about to terminate, Intercom sent its defective "Notice of Termination" with a 90-day period before it would become "effective," with the sole purpose of trying to improperly create a 90-day period in which it could use Plaintiffs' programming without a license. Similarly, the "lawsuit" commenced by Intercom against EuroVu in this Court was merely a sham to try to claim some sort of right to continue to distribute Plaintiffs' copyrighted content without a license or payment. I am not aware of any attempt to even serve EuroVu in that lawsuit.

**The Terms of Plaintiffs' Agreements with TVP S.A. (the Producer of TVP Polonia and TVP Info) were known to Intercom**

13.     Mr. Hoti's claim (Hoti Decl. ¶12) that he was denied access to the terms of certain license agreements – even assuming this is relevant to Intercom's copyright infringement – is also untrue.  Not only was Mr. Hoti informed as to the terms of these agreements; he was specifically offered the ability to look at these agreements.  On or about June 22 2011, Intercom Poland LLC  entered into a Purchase Option Agreement that gives it the option, until January 31, 2014,  to purchase certain of SEI's and EuroVu's rights to distribute Polish-language programming in the United States and Canada.  Section 2.6 of the Purchase Option Agreement allowed Intercom Ventures to inspect SEI's and EuroVu's distribution contracts.  Intercom Ventures has never exercised its right to do so.

14.     Although it has no bearing on Intercom's ongoing infringement, Mr. Hoti's declaration speculates (Hoti Decl. at ¶¶15-19) that SEI's rights to distribute another Polish-language television channel, TVP Polonia, are in jeopardy because EuroVu is in litigation with Telewizja Polska, S.A. ("TVP"), the producer of that channel.  There is pending litigation in the Southern District of New York, and the claims in that proceeding (which are totally unrelated to Intercom) are a matter of public record.  EuroVu is the plaintiff and the only non-frivolous claims are for damages.  SEI remains the exclusive North American rights holder of this channel, as it has been since 1994.

**Intercom's Infringing Activity is Causing Plaintiffs' Irreparable Harm, and is not in the Public Interest**

15.     Contrary to Intercom's contention, the Intercom subscribers who receive Plaintiffs' programming will not be harmed by the grant of an injunction because they can switch

to other services that provide this same programming. For instance, large television content providers such as Comcast and Globecast carry TVP Polonia and Tele5 under license from Plaintiffs, and most of the more popular programming of TVP Polonia can also be watched online, via a web site that EuroVu's affiliated company maintains. Approximately 45,000 subscribers watch TVP Polonia in this way, compared to approximately 3,000 Intercom subscribers.

16. Mr. Hoti is also wrong to say that Intercom (which is now distributing TVP Polonia and Tele5 without authorization) is not competing with EuroVu for subscribers. EuroVu distributes Polish-language programming through a variety of media, including its affiliated company's web site. Every day that Intercom continues to distribute TVP Polonia and Tele5 without authorization is a day that Intercom's subscribers will not migrate to these other services. Further, there are other IPTV providers to whom Plaintiffs' could license this programming. In addition, if Intercom continues its unauthorized distribution, the subscribers to services provided by EuroVu's licensees may migrate to Intercom and sign a contract for Intercom services, with the mistaken belief that Intercom is authorized to distribute TVP Polonia and Tele5.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 7th day of June 2012.

BOGUSLAW M. SPANSKI