UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                                                         :

SPANSKI ENTERPRISES, INC. and
EUROVU, S.A.,                                   :

               Plaintiffs,        :    12-CV-4175-WHP-AJP

            v.                                      :

INTERCOM VENTURES, LLC, INTERCOM :
POLAND, LLC, TONY HOTI, and DYLAN
BATES,                                            :

               Defendants.      :
------------------------------------------------------------ X

## DECLARATION OF BOGUSLAW M. SPANSKI IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DYLAN BATES' MOTION TO DISMISS

     I, BOGUSLAW M. SPANSKI, hereby declare as follows:

     1.     I am the President of Plaintiff Spanski Enterprises, Inc. ("SEI") and a director of Plaintiff EuroVu, S.A. ("EuroVu"). I have personal knowledge of the matters set forth herein and would testify to them if asked to do so.

     2.     I respectfully submit this Declaration on behalf of both SEI and EuroVu ("Plaintiffs"), and in support of Plaintiffs' Opposition to the Motion to Dismiss filed by Defendant Dylan Bates.

     3.     I have reviewed the Declaration filed by Mr. Bates in support of his Motion to Dismiss. Contrary to the statements he now makes in his Declaration that make it sound as though he has barely heard of the Defendant Intercom Poland, LLC ("Intercom Poland"), during the course of the negotiations of the agreements relating to Mr. Bates' company, Intercom Poland, he on numerous occasions represented and made clear to me that he was intimately

1

involved with the management of Intercom Poland, was the company's driving force and as such would do all he could to ensure the venture's success.

4. In December and January 2011, Mr. Bates, as Manager and financial backer of Intercom Poland, was (along with Defendant Tony Hoti) the principal negotiator of a License Agreement executed on January 31, 2011 between my company EuroVu and Defendant Intercom Ventures, LLC ("Intercom Ventures"). Intercom Poland, through Mr. Bates, was at all times involved in these negotiations, since Intercom Poland would be doing the actual marketing and distribution of the television content that Intercom Ventures was licensing from EuroVu (the content to be referred to as "the Programming").

5. Over the course of several months, as part of the License Agreement negotiations, I exchanged several dozen e-mails with Mr. Bates. Attached as Exhibit A are copies of several of these e-mails, showing extensive back-and-forth discussions and negotiations over various aspects of the License Agreement. At all times during these negotiations, Mr. Bates was acting on behalf of Intercom Poland and informed me that he had the power to do so.

6. During the first half of 2011, I also negotiated with Intercom Poland an entirely separate agreement, a Purchase Option Agreement, that gave Intercom Poland the option to purchase certain of the Polish-language television programming distribution rights controlled by me (through my ownership interests in the Plaintiffs). Mr. Bates was the primary person negotiating this agreement on behalf of Intercom Poland, and during the negotiation he represented to me that he controlled Intercom Poland. DBPol, LLC ("DBPol"), Mr. Bates' wholly-owned entity, signed this agreement as Manager of Intercom Poland, and Mr. Bates, as sole member of DBPol, signed for DBPol. Attached as Exhibit B is the first page and signature page of this agreement (which Mr. Bates produced).

7. My interactions with Mr. Bates were not confined to the negotiations of two agreements. Mr. Bates was also involved in the operations of Intercom Poland. For example, I met with Mr. Bates in July 2011 to discuss (among other things) Intercom Poland's efforts to grow its Polish-speaking subscriber base.

8. In August 2011, Mr. Bates contacted me to inquire if I would be interested in purchasing his interest in Intercom Poland. That deal was never consummated, but during the negotiations Mr. Bates told me that through his wholly owned company DBPol he was the Manager of Intercom Poland, and because of his investment in Intercom Poland, controlled the company. Attached hereto as Exhibit C is a true and correct copy of an e-mail exchange (produced by Mr. Bates) that is representative of the discussions we had in August 2011.

9. On behalf of EuroVu I had frequent communications with Intercom Poland during the time the License Agreement was in effect. I often spoke or e-mailed with Nunzio Castellano, Intercom Poland's head of operations, who, as I understood from Mr. Castellano, was Mr. Bates' "man" and choice to run the day-to-day operations of Intercom Poland, and who I further understood did not pay any major bills or fees, or take any other major decision, without checking with Mr. Bates first.

10. In May 2012, after Intercom Ventures went several months without paying its licensing fees to EuroVu, I again spoke extensively with Mr. Bates, in an effort to avert costly litigation and help Intercom Poland's Polish-language television operation stay on its feet.

11. Following the termination of the License Agreement effective May 18, Mr. Bates called me. Among other things I informed him that his company Intercom Poland was committing copyright infringement by distributing the Programming without authorization. Given his complete authority over Intercom Poland I also informed Mr. Bates that I (through my

companies and their attorneys) would seek to hold him personally responsible for Intercom Poland's infringing conduct.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 28th day of September 2012.

BOGUSLAW M. SPANSKI

4